## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEVEN R. PERLES, P.C., | ) |
| | ) |
| Plaintiff and Counterclaim-Defendant, | ) |
| | ) |
| v. | ) |
| | ) |
| ANNE-MARIE KAGY, ESQ., | ) |
| | ) |
| Defendant, Counterclaim-Plaintiff, | ) |
| and Third-Party Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| STEVEN R. PERLES, ESQ., | ) |
| | ) |
| Third-Party Defendant. | ) |

Civil Action No. 1:01CV0105
(TPJ) (AK)

### PRETRIAL BRIEF
### OF PLAINTIFF AND COUNTERCLAIM-DEFENDANT STEVEN R. PERLES, P.C.,
### AND THIRD-PARTY DEFENDANT STEVEN R. PERLES, ESQ.

Now before the Court, pursuant to its Orders of April 10, July 10, and August 22, 2003, are

two separate issues, consolidated to be resolved through trial: (1) "a determination of the amount of

the net fee or fees paid to Steven R. Perles, P.C., in the [case of *Flatow v. Islamic Republic of Iran*, 999 F.

Supp. 1 (D.D.C. 1998)] in consequence of the judgment for compensatory damages entered by

Judge Lamberth on March 11, 1998" (Order of April 10, at 11); and (2) Ms. Kagy's claim for

*quantum meruit* for her work, which the Court described as "early minimal contact" (*id.*, at 10 n.9), in

the case of *Eisenfeld and Duker v. Islamic Republic of Iran*, No. 98-CV-01:945 (D.D.C.).

Plaintiff and Counterclaim-Defendant Steven R. Perles, P.C., and Third-Party Defendant

Steven R. Perles, Esq. (hereinafter collectively referred to in the singular, unless the context requires

otherwise, as "Perles"), assume that the Court does not require an introduction to the underlying

issues of fact or law in this case. For all of the following reasons, and on the basis of the evidence to

be presented and the arguments submitted at trial, Perles respectfully submits that the answers to

these two questions are as follows:

> (I)  The net value to Perles of the compensatory portion of the *Flatow*
> judgment is to be calculated by deduction from the gross all direct
> costs actually incurred, as well as a fair allocation of indirect costs
> borne, by Perles P.C. in obtaining that judgment. It does not include
> any interest, whether pre- or post-judgment.[1]
>
> (II)  The prerequisites for a case in *quantum meruit* are not satisfied on
> these facts. But even if they were, the *quantum meruit* of Ms. Kagy's
> time spent on the *Eisenfeld & Duker* matter is the market hourly rate
> for her services times the number of hours she reasonably spent on
> that case. The only available and admissible evidence of the market
> value of her services is the fact that she earned $50 per hour for legal
> work performed for clients of Perles P.C. at approximately the same
> time. The number of hours reasonably chargeable to her work in the
> case is substantially lower than the 167 hours that she claims to have
> worked.

The legal and factual issues that the Court will have to resolve in order to reach these

answers are set out in the following sections. This Pretrial Brief concludes with an outline of the

witnesses and documentary evidence to be presented by Perles at trial.

### I. The Amount of Net Fees Paid to Perles P.C.
### in Consequence of the *Flatow* Compensatory Damages Award
### Is No More Than $2,877,482.82.

**A.  Issues of Law**

1.  It Is Proper to Deduct an Allocable Share of Indirect Costs to Arrive at a "Net Fee."

As a matter of law, of logic, and of language, a "net" fee is the gross fee less costs reasonably

attributable to the generation of the fee. This means that it is appropriate to deduct from the gross

---

[1] Perles concedes that Ms. Kagy will be entitled to post-judgment interest on any amounts awarded
to her in **this** case (*i.e.*, Civil Action No. 1:01CV0105), as from the date of a final judgment,
assuming of course that the judgment survives on appeal.

income that Perles received not only the undisputed direct expenses that it paid out-of-pocket (here, over $231,150), but also a share of its indirect expenses, since the latter too were essential elements in making it possible for the income to be received.

The allocation of indirect expenses in the calculation of net profits requires two elements: a determination of which expenses are to be apportioned, and a methodology for arriving at the portion of the whole attributable to the activity in question. In this case, Perles contends that the expenses to be shared are all of the costs of running the law office. And the allocation criterion that Perles proposes to use is hours (the unit of billing for most lawyers and law firms), setting as the measure the approximate ratio between the total hours worked by all billers in the firm on *Flatow*, and the total hours they invested in all matters for which payment might ultimately be received (*i.e.*, the total of all actually or potentially paying work).

Perles respectfully submits that this approach and this algorithm are entirely consistent with Judge Jackson's Order directing the Court to determine "the net fee or fees paid to Steven R. Perles, P.C." in connection with the compensatory damages award in the *Flatow* case.

2. The "Compensatory Damages" Portion of the Award Does Not Include Interest.

If Judge Jackson had intended Ms. Kagy to have a portion of the interest element of the award in the *Flatow* case, he would have said so. But he did not: he awarded her a third of the amount ordered by Judge Lamberth "in consequence of the judgment **for compensatory damages.**" The award reported at 999 F. Supp. 1, 32-34 (D.D.C. 1998) included more than compensatory damages – it included punitive damages of over $200 million. But Judge Jackson was specific as to the fund of which he found Ms. Kagy to be entitled to a third, and he described it in unambiguous language. It included the compensatory damages portion alone.[2]

_____

[2] Here, there was no element of pre-judgment interest in Judge Lamberth's award of damages. The only conceivable claim that Ms. Kagy might have for a share of interest in this case is for interest

As a matter of law, an award of "compensatory damages" does not include an award of interest. Generally, successful civil plaintiffs in federal litigation are entitled to post-judgment interest by statute. In this case, Congress enacted a special statute to permit the Flatows to recover anything, without having to go through the arduous process of seizing and levying on assets of the Islamic Republic of Iran located in the United States. This was the Victims Protection Act of 2000, Pub. L. 106-368, 114 Stat. 1464. It offered two options to plaintiffs who were successful in suits against foreign sovereigns for involvement in terrorist acts, relying on the newly-adopted exception to foreign sovereign immunity for such governments, 28 U.S.C. § 1605(a)(7). Given that all of such persons presumably were going to have awards comprising both compensatory and punitive elements, it provided that plaintiffs could take 110% of their compensatory damages, plus interest, from blocked Iranian funds held under the auspices of the Treasury. If they chose that alternative, they would relinquish any claim to the punitive portion of their awards.

The Flatows did not elect this option. The other choice did not require abandonment of efforts to collect punitive damages through execution against whatever Iranian assets a diligent search might find. Under that program, which was the choice made by the Flatow family here, they were entitled to "100 percent of the compensatory damages awarded by judgment of a court on a claim or claims brought . . . under [28 U.S.C. § 1605(a)(7)], **plus amounts necessary to pay post-judgment interest,** as provided in" 28 U.S.C. § 1961. Emphasis added.

Congress unambiguously made, in this statutory language, the same familiar distinction that Judge Jackson made in his Order of April 10, 2003: awards of compensatory damages generally do

---

accruing after that judgment, pursuant to 28 U.S.C. § 1961. But, as is argued in text, Judge Jackson did not include such an element in his Order, which is limited to "compensatory damages" only.

not include (but rather are supplemented by) post-judgment interest, which here was awarded specially by Congress separate and apart from damages to make these plaintiffs whole.[3]

## B. Issues of Fact

The compensatory portions of the damages award aggregate to $22,513,220.  According to the uncontradicted testimony at trial, Perles was entitled to a contingency share of 1/3 of the award, which share was to be split between Perles and the law offices of Thomas Fortune Fay, Esq., meaning that the Perles share of the judgment for compensatory damages was one-sixth of the total award, or $3,752,203.33.

Perles will demonstrate that the "amount of the net fee or fees paid to Steven R. Perles, P.C., in the [case of *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1 (D.D.C. 1998)] in consequence of the judgment for compensatory damages entered by Judge Lamberth on March 11, 1998" (Order of April 10, at 11) was $2,877,482.82.  This is the total fee net of both direct and apportioned indirect costs.  Under the Court's Order, Ms. Kagy is entitled to a judgment of one-third of this amount, or $958,201.78.

At trial in this matter, Perles will present testimony that each of the direct costs incurred by the law firm was in fact an incident to obtaining the eventual judgment, and that each was in fact in the amount stated.  These total $231,150, broken down as follows:

| | |
|---|---|
| Filing fee | $      150.00 |
| Videography | $ 50,000.00 |
| Patrick Clawson (expert) | $   5,000.00 |
| Reuven Paz (expert) | $ 20,000.00 |

---

[3] The opinion of the D.C. Circuit in a portion of the *Flatow* case litigated by Perles well after Ms. Kagy's departure is entirely consistent with this analysis, and with the conclusion that the authority to award pre-judgment interest to terrorism plaintiffs like the Flatows is different from the authority to award them compensatory damages.  *See Flatow v. Islamic Republic of Iran*, 305 F.3d 1249 (D.C. Cir. 2002).

| | |
|---|---|
| Harry Brandon (expert) | $ 10,000.00 |
| Lee Hamel, Esq. (local counsel) | $ 60,000.00 |
| Jane Norman, Esq. (local counsel) | $ 36,000.00 |
| Rabbi Kranz (Hill assistance) | $ 50,000.00 |
| **Total direct costs** | **$231,150.00** |

With respect to the indirect expenses, Perles will offer evidence that (a) the total costs were in the amounts shown in the table annexed as Exhibit 1; and (b) the allocation percentages shown below in fact reflect the ratio of work on the *Flatow* case to the total work performed in the office during the relevant period. These expenses and ratios, covering the period from the beginning of work on the *Flatow* case until payment was received, are as follows:

| Year | Total indirect costs | Percentage | *Flatow* portion |
|---|---|---|---|
| 1996 | $347,192.85 | 89% | $309,001.64 |
| 1997 | $203,658.38 | 70% | $142,560.87 |
| 1998 | $88,766.59 | 77% | $68,350.27 |
| 1999 | $81,277.64 | 71% | $57,707.12 |
| 2000 | $72,408.80 | 90% | $65,167.92 |
| 2001 (Jan. only) | $9,135.67 | 87% | $7,948.03 |
| **Total** | **$802,439.93** | | **$650,735.85** |

From this allocated share of indirect costs attributable to the *Flatow* case must be deducted the amount of $7,165.34, reflecting certain payments for such expenses made by the Flatow family. These sums did not reduce the fee recovered by Perles, since they were borne by the client prior to distribution of the compensatory award from the U.S. Treasury.

As has been shown, the gross payment received by the Perles law firm for its work on *Flatow*, reflecting its contingency share of the compensatory damages award, was $3,752,203.33. Deducting

6

the whole of the direct expenses, and the allocated portion of the indirect expenses, and adding back

the portion defrayed by the Flatow family, yields a net fee of $2,877,482.82.  One-third of this is

$958,201.78, the amount that should now be awarded to Ms. Kagy under the terms of the Judge's

Order of April 10, 2003.

## II.  Even if the Doctrine of *Quantum Meruit* Applies on These Facts, the Quantum Attributable to Ms. Kagy's Work on the *Eisenfeld and Duker* Case Is $50 Times Her Reasonable Hours.

As the Court is aware, a matter preliminary to resolution of the *quantum meruit* case is Perles's

pending Motion in Limine, which has been fully briefed, and as to which undersigned counsel have

requested oral argument.  The Court's decision on that Motion will obviously control the manner in

which this matter is tried:  which witnesses will be called, the manner of introduction and the

admissibility of documentary evidence, and so on.  Perles respectfully reiterates its request that the

Court hear and decide the Motion as far in advance of trial as possible.

### A.  Issues of Law

#### 1.  The Fourth Element in *Quantum Meruit* Requires a Legitimate Expectation of Payment.

The elements of a *quantum meruit* claim have many times been listed by the courts of the

District of Columbia.  To recover on such a theory, a plaintiff must show "(1) that valuable services

were rendered, (2) to the person from whom recovery is sought, (3) which services were accepted by

that person, (4) under such circumstances as reasonably notified the person that the plaintiff

expected to be paid by that person."  *Dorsky Hodgson & Partners, Inc. v. National Council of Senior

Citizens*, 766 A.2d 54, 58 (D.C. 2001), quoting *Vereen v. Clayborne*, 623 A.2d 1190, 1193-94 (D.C.

1993).

The fourth element is critical, and its absence, all things being equal, can alone defeat a

*quantum meruit* case.  *Dorsky Hodgson,* 766 A.2d at 58.

2. Ms. Kagy Bears the Burden of Proving Both the Market Value of Her Services
and the Reasonableness of the Time She Claims to Have Invested in the Case.

Ms. Kagy is Plaintiff in the *quantum meruit* case, and the law of this jurisdiction therefore

imposes on her a very clearly-delineated burden.  She must prove both (a) the unit price (*i.e.*, the

market value) of her time, and (b) the number of hours she reasonably spent on the *Eisenfeld and*

*Duker* case.  The District of Columbia Court of Appeals assigned this burden unequivocally to the

*quantum meruit* plaintiff in *Jonathan Woodner Co. v. Laufer*, 531 A.2d 280, 287 (D.C. 1987).[4]  And it is

necessary for the proponent to establish reasonableness based on something more precise than

inchoate "experience."

If, incidentally, Ms. Kagy contends that her time should be valued at any measure other than

the market, including the various algorithms occasionally used for gauging the value of lawyers'

professional services (such as the so-called "lodestar" method), it is still Ms. Kagy's burden to

demonstrate that any particular augmentation or multiplication is appropriate on the facts of this

case.  That requires empirical evidence, and the testimony of someone competent to opine about the

value of professional legal time, the difficulty of her assignment, and so on.

**B.  Issues of Fact**

Perles will introduce the testimony of Steven R. Perles, Esq., to the effect that Ms. Kagy did

not offer her very limited participation in the *Eisenfeld and Duker* matter under such circumstances to

give rise to the understanding that she expected to be paid.  Indeed, he will testify that she declined

to be part of the *Eisenfeld and Duker* litigation team, believing that the chances of payment eventually

for any work on that case was simply too remote:  her work in the case was therefore the "early

---

[4] This is the case discussed at length in various submissions on behalf of Perles on the Motion in
Limine, since counsel for the successful appellant -- who argued that a *quantum meruit* plaintiff must
demonstrate both market value and reasonableness -- was Robert F. Condon, Esq., Ms. Kagy's
putative expert in this case, who now urges a diametrically opposite approach, and whose opinion
does not even mention his successful representation in *Woodner*.

minimal contact" to which Judge Jackson adverted.[5]  Moreover, a large amount of the time for which Ms. Kagy now claims compensation was, in her own words, for "business development."  No lawyer reasonably expects to be paid for such activities.

Assuming, then, that Ms. Kagy can carry the burden of showing that the prerequisites for such a case are met, in Perles's submission, the calculation of *quantum meruit* requires the performance of a simple arithmetic operation:  multiplication of unit value (here, a lawyer's hourly billing rate) times the number of units reasonably delivered (here, the hours reasonably spent on the *Eisenfeld and Duker* case).  But both of the numbers that must be multiplied will require proof as contested issues of fact.

Perles intends to demonstrate that the only appropriate measure of the value of Ms. Kagy's professional legal services is the market for those services, which never paid her more than $50 per hour over the course of her entire career.  That was the rate she agreed with Perles for her time spent on paying cases that called for essentially the same skills and knowledge (*i.e.*, drafting written submissions in domestic litigation involving international law issues).  When performing legal services for other lawyers and other firms, even after she left Perles's employ, she never reached even this level.

With respect to the time that Ms. Kagy claims she spent on the case – which is approximately 167 hours – Perles will demonstrate that the descriptions she recorded cannot conceivably justify even this relatively small amount of time.  As noted, some time was incurred before the clients hired the firm.  Other amounts of time were charged after the judgment was received.  Many of the tasks Ms. Kagy claims she performed were ministerial or even secretarial.  She herself admits that she employed models and templates for most of the documents she claims to

---

[5] In the words of the D.C. Circuit, she did not "hold payment of . . . a fee in prospect." *Bloomgarden v. Coyer*, 479 F.2d 201, 212 (D.C. 1973).

have drafted. Judge Jackson awarded her almost a million dollars for drafting those papers in the *Flatow* case: she is surely not entitled to collect for that work a second time.

According to her time records, the documents actually filed in Court in the *Eisenfeld and Duker* case took her about 100 hours to prepare. She also claims remuneration for various business development activities, including meeting with the Eisenfeld and Duker families before they retained the Perles firm. In the year 2000 – that is, after she left the employ of Perles – she seeks payment for hours spent preparing and giving a guest lecture, apparently during a Career Day-type presentation at her undergraduate alma mater. There is no conceivable way that these investments of time can be said to have been made in the expectation of payment (nor, in the case of the hours spent at her college, in the year 2000, were any services rendered to or for the benefit of Perles, from whom recovery is now being sought; the second *Dorsky Hodgson* criterion).

And even the 100 hours relating to the papers filed in Court in *Eisenfeld and Duker* contain unreasonable claims. Ms. Kagy herself testified that the *Eisenfeld and Duker* complaint was strictly patterned on the complaint in *Flatow*. The complaint in the later case was less than 20 pages in length: there is no conceivable way it could have taken Ms. Kagy, merely revising the *Flatow* complaint to reflect the facts distinct to *Eisenfeld and Duker*, more than 60 hours to prepare, as she claims.

Through the testimony of Mr. Perles and the cross-examination of Ms. Kagy, Perles will submit that the reasonable number of hours to be credited to Ms. Kagy in *Eisenfeld and Duker* is no greater than 67. At the rate of $50 per hour, which is the maximum market rate for her services, the proper calculation of a *quantum meruit* award for her work on *Eisenfeld and Duker* yields an award of $3,350.

### III. Witnesses and Exhibits

#### A. Witnesses

On Issue I (the value of the compensatory portion of the *Flatow* award), Perles intends to present the testimony of Steven R. Perles, Esq., and Ms. Donna Keeney, the bookkeeper for the Perles law firm. They will testify that the direct expenses claimed by Perles were in fact incurred and were instrumental to the *Flatow* litigation strategy. Mr. Perles and Ms. Keeney will also testify to the amounts and the allocations of indirect costs.

To the extent necessary, these submissions may be supplemented by the testimony of Thomas Fortune Fay, Esq.

On Issue II (*quantum meruit*), Mr. Perles (and perhaps Mr. Fay) will give evidence concerning the quality and quantity of the work performed by Ms. Kagy in the *Eisenfeld and Duker* case. Either Dr. Leonard Eisenfeld or Ms. Vicki Eisenfeld, two of the clients in that case (the parents of Matthew Eisenfeld, one of the terrorism victims), may also be called to testify about the quantity and quality of Ms. Kagy's contribution to the case in general, and specifically to refute Ms. Kagy's contention that her participation in a meeting at the Eisenfelds' home was the basis for the decision of the families to retain the Perles firm, and therefore should be included in the time for which she is entitled to be compensated on a *quantum meruit* theory.

Perles reserves the right to call any witness, fact or opinion, identified by Ms. Kagy.

#### B. Exhibits

Attached to this Brief as Exhibit 2 is a table showing the Exhibits that Perles expects to introduce at trial. This is an amended version of the list presented to the Court in January. Perles has deleted reference to those documents, whether or not already admitted into evidence, that are not relevant to the issues now before the Court. Added are certain new materials, not previously

11

introduced, whose admission Perles intends to move.  All Exhibits numbered through 118 have

already been admitted.

   Perles reserves the right to introduce any document identified by Ms. Kagy.


                              Respectfully submitted,


                              Steven M. Schneebaum
                                 D.C. Bar No. 956250
                              Debra M. Laboschin
                                 D.C. Bar No. 473582
                              PATTON BOGGS LLP
                              2550 M Street, N.W.
                              Washington, D.C. 20037
                              (202) 457-6300

                              Counsel for Plaintiff and Counterclaim-Defendant
                                 Steven R. Perles, P.C.
                                 and Third-Party Defendant
                                 Steven R. Perles, Esq.


Date:  December 10, 2003

## CERTIFICATE OF SERVICE

I hereby certify that, on this 10th day of December 2003, I served the foregoing

PRETRIAL BRIEF OF PLAINTIFF AND COUNTERCLAIM-DEFENDANT STEVEN R.

PERLES, P.C., AND THIRD-PARTY DEFENDANT STEVEN R. PERLES, ESQ., upon

Defendant and Counterclaim-Plaintiff, by facsimile, and by having a copy thereof hand-delivered,

to her counsel:

> David E. Sher, Esq.
> Mark D. Cummings, Esq.
> SHER AND CUMMINGS, P.C.
> 3800 North Fairfax Drive, Suite 7
> Arlington, Virginia 22203

Debra M. Laboschin

13