## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Steven R. Perles, P.C., et al.          )
                                        )
        Plaintiff/Counter-Defendant,    )
                                        )
v.                                      )          Case Number: 1:01CV00105
                                        )
Anne-Marie Lund Kagy, Esq.              )
                                        )
        Defendant/Counter-Plaintiff     )
                                        )
v.                                      )
                                        )
Steven R. Perles, Esq.                  )
                                        )
        Third-Party Defendant.          )
_____      )

## MOTION FOR SANCTIONS AND SUPPORTING MEMORANDUM

Comes Now, Anne-Marie Lund Kagy, ("Ms. Kagy") Defendant and Counterclaim Plaintiff, by counsel, and moves this Honorable Court, pursuant to 28 U.S.C.A. § 1927 and the Court's inherent powers for an Order requiring Steven R. Perles, P.C.,  Plaintiff and Counterclaim Defendant, Steven R. Perles, Esq., Third Party Defendant (Collectively "Mr. Perles")[1] and/or his attorney Steven Schneebaum ("Mr. Schneebaum") to pay Ms. Kagy reasonable attorneys' fees incurred by Ms. Kagy in defending against the contract claim Mr. Perles brought and subsequently abandoned post-trial, as well as other sanctions as the Court may deem appropriate. In conjunction with the above-mentioned motion, Ms. Kagy moves this Court, pursuant to subsection (c) of Section 2 to Rule 37 of the Federal Rules of Civil Procedure, to enter an order requiring Mr. Perles

_____

[1] Following the first trial in this matter in January 2003, the Honorable Judge Thomas Penfield Jackson found that the law firm is the alter ego of Mr. Perles for purposes of this lawsuit. April 10, 2003 Memorandum Opinion, p. 1 n. 1.

1

pay her costs and attorneys fees in proving Mr. Perles offered to pay her one-third of his fees in the underlying case of <u>Flatow v. The Islamic Republic of Iran, et al,</u> 999 F. Supp. 1 (D. D.C. 1998), <u>et. seq.</u>, 97-cv-396, and in proving that she had a reasonable expectation of payment for her work on <u>Eisenfeld and Duker v. The Islamic Republic of Iran,</u> 172 F. Supp. 2d 1 (D.D.C. 2000), 98-cv-1945. [2]

In support thereof, Ms. Kagy relies on time records, as well as Affidavits of David E. Sher and Janie Hall, attached hereto incorporated by reference.  Ms.Kagy further states as follows:

### Grounds for the Motion

Mr. Perles and his attorney, Stephen Schneebaum, acted in bad faith by filing, litigating, and then abandoning post-trial a contract claim that had no basis in fact and was not warranted under existing law. These actions subject the Plaintiff and his counsel to sanctions under the court's inherent powers, and subjects Mr. Schneebaum to sanctions under 28 U.S.C.A.§ 1927. The grounds for the motion pursuant to Rule 37 are two-fold. Mr. Perles was served with a Request for Admission that "you made an oral offer to Anne-Marie Kagy to compensate her for her services in the <u>Flatow</u> case in an amount equal to one-third of your legal fee," and he unreasonably denied said request. Defendant and Counterclaim-Plaintiff Anne-Marie Kagy Esq.'s First Request for Admissions to Plaintiff and Counterclaim Defendant Steven R. Perles Request No. 5 and Response of Counterclaim Defendant. Response No. 5; Trial Exhibits A-1, A-2.  Ms. Kagy proved this fact at trial and Rule 37(c)(2) of the Federal Rules of Civil Procedure requires the Court

---

[2] This motion addresses only Ms. Kagy's request for sanctions.  She will also file a timely Bill of Costs pursuant to Local Rule 54.1.

to award Ms. Kagy the expenses and fees incurred in proving this fact.  Mr. Perles was also served with a Request for Admission that "Anne-Marie Kagy had an expectation of payment in <u>Flatow</u> and <u>Eisenfeld and Duker</u> that was contingent on recovery."  Mr. Perles denied the request "with respect to <u>Eisenfeld and Duker</u>," and Ms. Kagy proved this fact at the trial on her <u>quantum</u> <u>meruit</u> claims. Defendant and Counterclaim-Plaintiff Anne-Marie Kagy Esq.'s First Request for Admissions to Plaintiff and Counterclaim Defendant Steven R. Perles Request No. 1 and Response of Counterclaim Defendant. Response No. 1; Trial Exhibits A-1, A-2.  Ms. Kagy is entitled to the expenses and fees incurred in proving this fact pursuant to Rule 37(c)(2) of the Federal Rules of Civil Procedure.

## Procedural History

This case involves a dispute over the compensation for professional services that Anne-Marie Lund Kagy ("Ms. Kagy") provided to Steven R. Perles, Esq., and Steven R. Perles, P.C. from 1996 to 2000 in the cases of <u>Flatow v. The Islamic Republic of Iran, et al,</u> 999 F. Supp. 1 (D.D.C. 1998), <u>et. seq.</u>, 97-cv-396, and <u>Eisenfeld and Duker v. The Islamic Republic of Iran,</u> 172 F. Supp. 2d 1 (D.D.C. 2000), 98-cv-1945.  Mr. Perles initiated this lawsuit on January 19, 2001, by filing a Complaint[3] for declaratory judgment alleging that any claim for fees by Ms. Kagy sounds in contract, and that under the contract terms, Ms. Kagy was to be paid a "contingent" hourly fee for her properly documented and substantiated time. Complaint at p.1 ¶ 4.  Ms. Kagy filed a counterclaim for breach of contract, contending that the parties formed an oral agreement under which

---

[3] The Complaint followed a letter dated December 4, 2000, from Ms. Kagy's counsel asserting a lien to one-third of Mr. Perles's fee in <u>Flatow</u> and <u>Eisenfeld and Duker</u>. Letter dated Dec. 4, 2000, attached as Exhibit A to Answer, Counterclaim and Third-Party Complaint.

she was to receive one-third of Mr. Perles's net fee upon recovery in both cases. Kagy Counterclaim ¶¶ 48, 88-94. In the alternative, Ms. Kagy filed claims for breach of contract implied-in-fact and quasi-contract (unjust enrichment), claiming recovery under a <u>quantum</u> <u>meruit</u> theory. <u>Id.</u> at ¶¶ 95-102.

The Honorable Judge Thomas Penfield Jackson heard evidence on Mr. Perles's claims in a bench trial beginning on January 21, 2003.  After the Plaintiff's case closed around noon on January 23, 2003, Ms. Kagy began to present evidence on her claims for breach of contract that afternoon. Jan. 23 Tr. p. 57-58. At the beginning of the session on January 24, Judge Jackson severed the "issues of express contract and <u>quantum</u> <u>meruit</u>." Jan. 24 Tr. p. 5, lns. 20-22.   At the close of evidence on the contract claim, Judge Jackson reiterated that the "<u>quantum</u> <u>meruit</u> issue" was severed and instructed counsel to prepare findings of fact and conclusions of law based only on the "express contract issue." Jan. 28 p. 75, lns. 10-12, p. 74 lns. 2-23; p. 76 lns. 6-8.

On April 10, 2003, following oral argument and the submissions of written proposed Findings of Fact and Conclusions of Law by both parties, Judge Jackson entered a Decision and Order pursuant to Rule 52 of the Federal Rules of Civil Procedure. The Court found that the parties had formed an oral contract for one-third of Mr. Perles's net fee in the <u>Flatow</u> case, and referred the matter to the Honorable Magistrate Judge Alan Kay for a determination of the amount of Mr. Perles's "net fee." April 10, 2003 Order p. 11.  Ms. Kagy filed a Motion to Amend the Decision and Order, and Judge Jackson vacated the part of the April 10, 2003, Order that dismissed  Ms. Kagy's <u>quantum</u> <u>meruit</u> claims as moot. By agreement of the parties, these claims were

referred to Magistrate Judge Alan Kay for a determination. Judge Kay heard evidence on these issues in December 2003.

On August 18, 2004, Judge Kay entered a decision and Order directing Mr. Perles to "pay Anne-Marie Kagy one-third of  $3,785,237.12, the net fee paid to Perles in the Flatow case in consequence of the judgment of compensatory damages."

 Following a Motion to Reconsider filed by Ms. Kagy and Objections filed by Mr. Perles, on November 29, 2004, the Honorable Judge Ellen Segal Huvelle ordered that judgment be entered on behalf of Ms. Kagy in the amount of one-third of $3,785,127.12, the net fee paid to Perles in the Flatow case in consequence of the judgment for compensatory damages, plus one-third of the actual interest accrued on the above-mentioned sum from January 17, 2001. By agreement of the parties, the case was transferred to Judge Kay for all further matters. Order dated  December 23, 2004.

On March 21, 2005, the Court entered an Order and Memorandum Opinion denying Mr. Perles's request for declaratory judgment and granted Ms. Kagy's claim for equitable remuneration from Mr. Perles for her work on the Eisenfeld and Duker case based on a lodestar calculation. March 21, 2005, Order p. 3.   Ms. Kagy filed a Motion to Amend said Order on April 4, 2005, which was denied on April 21, 2005 in conjunction with the entry of judgment.

## **Factual Background**

Ms. Kagy asks the Court to take judicial notice of the following facts pursuant to Rule 201 of the Federal Rules of Evidence:

1.     The trial of this action established that the parties formed an oral contract under which Mr. Perles was to pay Ms. Kagy one-third of his net fee in the <u>Flatow</u> case. April 10, 2003, Memorandum Opinion of Judge Thomas Penfield Jackson, p. 8, p. 10-11.

2.     Judge Jackson credited Ms. Kagy's testimony in regard to the fee arrangement "because it is supported by substantial corroborating evidence, both direct and circumstantial, while Perles's testimony is contradicted by a judicial admission, found in Paragraph 20 of his complaint for a declaratory judgment, that he had offered her a "percentage" compensation." April 10, 2003 Memorandum Opinion p. 8.

3.     Judge Jackson ruled that a telephone conversation between the two parties in May 1997 "constituted either an admission by Perles that the agreement <u>ab initio</u> called for her to receive a percentage of his fee in <u>Flatow</u> or, alternatively, that it represented an oral addendum or amendment to that effect to any contrary agreement as he remembered it." April 10, 2003 Order p. 10-11.

4.     In his Complaint, Mr. Perles alleged that he offered Ms. Kagy the opportunity to work on the <u>Flatow</u> case for an unspecified percentage of his fee. Complaint, ¶ 20. Also in his Complaint, in response to Ms. Kagy's counter-claim, and at trial, Mr. Perles stated that Ms. Kagy rejected this offer and agreed to work instead for an unspecified hourly fee contingent on successful recovery. Complaint ¶ 20; Answers of Plaintiff and Counterclaim-Defendant dated May 17, 2002, ¶ 53; Transcript of January 2003 Trial, January 21, p. 156 lns 1-7 [hereinafter: _____ Tr. p. ___, lns. ___]. In his Complaint, Mr. Perles claimed that Ms. Kagy worked on the <u>Eisenfeld and Duker</u> case "under a fee basis that was the same as in <u>Flatow</u>." Complaint ¶ 21.

5.      In later testimony at trial, Mr. Perles denied that he had offered Ms. Kagy a

percentage recovery in <u>Flatow</u>:

> **Sher**: Did you offer her an unspecified percentage.
> **Perles**: No I did not. . . .
> **Sher**:   Now I'm a little confused about why you say that you didn't offer
> her an unspecified percentage because that's what you allege in your
> Complaint.  Are you aware of that?
> **Perles**: May I see the Complaint first?
> **Sher**: If you want to Okay. I am going to show you page six of your
> Complaint.
> **Perles**: Thank you.
> **Sher**:   Paragraph 20 and ask you to look at that and tell me whether or not
> you offered her an unspecified percentage according to the Complaint.
> **Perles**: An offer for an unspecified amount, an unspecified percentage of
> the recovery was never conveyed to her because she was unwilling to
> make the commitment that was required to receive the offer. She made it
> quite clear she could not stay for the duration of this case and I was
> unwilling to make such an offer to her under that circumstance. . . .

Jan. 22, 2003 Tr. p. 44-45

6.      On July 10, 2001, Ms. Kagy served a Request for Admission on Mr.

Perles that read:

> Please admit that you made an oral offer to Anne-Marie Kagy to
> compensate her for her services in the <u>Flatow</u> case in an amount equal
> to one-third of your net legal fee.
>
> On September 10, 2001, Mr. Perles answered by stating: "Denied."

Trial Exhibits A-1, A-2, Question and Response No. 5; Dec. 18 (p.m.) Tr. p. 94

ln. 10 to p. 96 ln. 6.

7.      On July 10, 2001, Ms. Kagy served a Request for Admission on

Mr. Perles that read:

> Please admit that Anne-Marie Kagy's expectation for payment in
> <u>Flatow</u>, and <u>Eisenfeld and Duker</u> was contingent on recovery.
>
> On September 10, 2001, Mr. Perles answered by stating:

> Admitted with respect to <u>Flatow</u>, denied with respect to <u>Eisenfeld and Duker</u>. With respect to the latter case, the Answering Parties deny that Ms. Kagy had any expectation of payment, since it was known and accepted by all parties that she would not be working on the case.

Trial Exhibits A-1, A-2, Question and Response No. 1; Dec. 18 (p.m.) Tr. p. 94 ln. 10 to p. 96 ln. 6.

8.      In the Pretrial Statement filed by Mr. Perles on December 19, 2002, Mr. Perles denied that there was an express or implied contract for one-third of his net recovery. Pretrial Statement of Plaintiff and Counterclaim-Defendant Steven R. Perles, P.C. and Third-Party Defendant Steven R. Perles, Esq., p. 2.

9.      In his complaint and at trial, Mr. Perles acknowledged that he had a contractual duty to pay Ms. Kagy for "<u>Flatow</u> and related cases," but maintained that she was entitled to an elevated hourly rate for all properly documented hours. Complaint ¶ 54; Jan. 21 p. 156 lns. 3-7.  During the five-day trial in January 2003 before Judge Jackson, Perles testified that Ms. Kagy understood that she was to keep track of her hours and that she would be paid on a multiple of her normal hourly rate of $50 per hour. Jan. 21 Tr. p. 156 lns. 1-7.

10.      Mr. Perles testified that Ms. Kagy accepted his offer and began to work on the <u>Flatow</u> case. Jan. 21 Tr. p. 157.

11.      Mr. Perles testified that Ms. Kagy raised the issue of her compensation in <u>Flatow</u> "periodically and continuously throughout the relationship." Jan. 21 Tr. p. 179 ln. 14 to 180 ln. 1. He admitted, however, that he never shared with her his "offer" of an unspecified multiple of her hourly rate that he had in mind and that he did not ask her for reports of her hours. Jan. 21, 2003 Tr. pp. 154-56.   He testified that if Ms. Kagy had

reduced his offer to writing, he would have discussed with her his "idea" of a multiple rate, but that he never "volunteered" this rate. Jan. 21 Tr. p. 169 lns 10-18.   He testified that prior to the initiation of litigation in the case at bar, there had never been a calculation of her hourly "investment in the cases." Jan. 23 Tr. p. 38, lns 17-18. Instead, when she left his employ, he asked for a compilation of her work product.  An index of this work saved on a computer ZIP disk was admitted at trial as Plaintiff's Exhibit 101. Jan. 22 Tr. p. 28 ln 7 to p. 29 ln. 8.

13.     Mr. Perles's Complaint alleged that, based on this elevated hourly rate computation, Ms. Kagy was entitled to approximately $75,000. Complaint ¶ 54. Mr. Perles testified that he and Mr. Fay computed her fees calculated at her normal rate, not an elevated rate, would amount to approximately $75,000 to $125,000. Jan. 22, Tr. p. 29 ln. 20,. to p. 30 12 ln. 4.  This calculation was not based on a review of the contents of the ZIP disk, allegedly compiled for this purpose, as the disk at that point was in the possession of the law firm representing Mr. Perles Jan. 21, p. 156 ln. 19 to 157 ln. 5; Jan. 22 p. 29 ln. 18 to p. 30 ln. 4.  He testified that he and Mr. Fay had discussed various methods of paying Ms. Kagy, including setting up an institute in conjunction with the George Mason University School of Law and employing her with that institute. Jan. 23 p. 44 ln. 8 to p. 45 ln. 9. Mr. Perles testified that he was "contractually" obligated to pay her at triple her hourly rate, and that he and Mr. Fay settled on merely paying her this triple rate when he received a letter from Mr. Sher asserting Ms. Kagy's one-third interest in his legal fees.  Jan. 23 p. 45 lns. 16-17.

14.     Mr. Fay testified that Mr. Perles never told him that he had an hourly fee arrangement with Ms. Kagy. Jan. 21 Tr. p. 87.  Mr. Fay testified that he came up with the

$75,000 to $125,000 figure based on estimates of annual salaries for associates in top flight law firms during that time period. Jan. 21 Tr. p. 76, lns. 12-18, p. 5-6.

15.     Mr. Perles testified that Ms. Kagy's rate of compensation was to be a unilateral decision on his part and if she thought her rate was "unreasonable" she had a "remedy. We are here."  Jan. 23 Tr. p. 53, ln. 10 – p. 55 ln. 14.  He testified that he "could not speculate as to what she was thinking" with respect to whether she was to be compensated on a pro-rata basis in <u>Flatow</u> based on his total recovery. Jan. 22 Tr. p. 78 lns. 17-19. He also testified that he had never entered into another hourly contingent fee arrangement. Jan. 23, 2003 p. 19 lns. 8-13.

16.     At the close of trial on the express contract claims, in his Proposed Findings of Fact and Conclusions of Law, Mr. Perles again contradicted his testimony as to Ms. Kagy's understanding of the contract terms, and abandoned his contract claim, putting forth the following strenuous arguments as to why his own claim that initiated this action should fail:

> Even if it was [sic] clear to Mr. Perles at all times that he intended to offer Ms. Kagy a compensation arrangement in <u>Flatow</u> based on an (unspecified) multiple of her normal hourly rate of $50, contingent on collection, the Court sees no evidence that Ms. Kagy understood and internalized that this was to be the basis on which her eventual payment would be calculated. . . . It does appear, however, that the Court cannot possibly, on the evidence before it, conclude that there was an actual meeting of the minds under which both parties accepted Mr. Perles's understanding of the arrangements as to Ms. Kagy's compensation for working on the <u>Flatow</u> case.

Plaintiff's Proposed Findings of Fact and Conclusions of Law (March 2003) p. 8-9 ¶¶ 6 (b)(c)

> For all of the foregoing reasons, and based on the testimony and exhibits accepted into evidence, this Court finds as a matter of fact that there was never a meeting of the minds between Anne-Marie Kagy, Esq., on one hand, and Perles, P.C. on the other, to the effect that she was to be paid

any particular amount of money for her work in the cases of <u>Flatow v. Islamic Republic of Iran</u>, N. 97-0396 (D.D.C.) and <u>Eisenfeld and Duker v. Islamic Republic of Iran</u>, No. 98-1945 (D.D.C.)

In particular, the Court rejects the contention that the parties had an actual meeting of the minds **either** that: (i) Ms. Kagy was to be paid one-third of the net recovery of Perles P.C. in those cases; or that (ii) in the event of recovery, Ms. Kagy was to be paid her hourly rate of $50 for each legitimate hour of work, multiplied by some unspecified factor.

The Court therefore finds that neither party can succeed on its contract theory in this case, because neither party can prove that there was actual agreement on the terms she or it has identified.

Plaintiff's Proposed Findings of Fact and Conclusions of Law (March 2003) p. 18 ¶ 13(a)(b)(c)

Plaintiff contends that the contract it had with Ms. Kagy called for her to work on the <u>Flatow</u> case in exchange for payment, to be received only in the event of an eventual collection of fees from the defendant, measured by her hourly rate enhanced by an "unspecified multiple." The Court holds that such an arrangement leaves open a material term that must by rights be part of a contract for services: namely the amount of consideration (i.e. the price.)

Plaintiff's Proposed Findings of Fact and Conclusions of Law (March 2003) p. 21 ¶ 2(b).

For all of the foregoing reasons, the Court adjudges and decrees that there was no contract express or implied in fact between Anne-Marie Kagy and Perles P.C. under which she was entitled to be paid any specific or ascertainable sum for her legal services in the cases of <u>Flatow</u> and <u>Eisenfeld and Duker</u>. Accordingly, the Court will today sign an order dismissing Plaintiff's complaint for declaratory relief . . .

Plaintiff's Proposed Findings of Fact and Conclusions of Law p. 22-23 (March 2003) ¶ (C).

17.    After pleading in his Complaint that he was "contractually obligated" to pay Ms. Kagy for her work on "<u>Flatow</u> and related cases," Mr. Perles pled in discovery and testified at trial that Ms. Kagy had no expectation of payment for her services in <u>Eisenfeld and Duker</u>. Complaint ¶ 21; Response to Request for Admission No. 1; Dec. 23

(a.m.) Tr.p. 74 ln. 24 – p. 75 ln. 20.   Mr. Perles also testified that he had offered Ms. Kagy her the "same remuneration" in <u>Eisenfeld and Duker</u> as he had offered her on the <u>Flatow</u> case, which he maintained was a multiple of her hourly rate. Dec. 23 (a.m.) Tr. p. 79 ln. 7- p. 80 ln. 20.   In his Proposed Findings of Fact and Conclusions of Law, Mr. Perles did another about-face and stated that Ms. Kagy undertook work on the <u>Eisenfeld and Duker</u> case "with the reasonable expectation she would be compensated for it." Counterclaim Defendant's Proposed Findings of Fact and Conclusions of Law filed March 17, 2004, p 2 ¶ (B).

18.     In his Memorandum Opinion dated March 21, 2005, Judge Kay found the "related cases" to which Mr. Perles admitted to having a contractual obligation to pay Ms. Kagy in paragraph 53 of  his Complaint referred to <u>Eisenfeld and Duker</u>. March 21, 2005 Opinion p. 5.   Judge Kay also found that Mr. Perles's own testimony and pleadings proved he was aware of Ms. Kagy's expectation of payment, as the evidence showed the parties had discussed Ms. Kagy's desire to formalize their agreement. March 21, 2005, Memorandum Opinion p. 5.

19.     Judge Kay found that Ms. Kagy is entitled to the "market hourly rate," for her services to Mr. Perles on the <u>Eisenfeld and Duker</u> case. March 21, 2005 Memorandum Opinion p. 18.

**<u>ARGUMENT</u>**

I.     MR. PERLES FILED HIS CONTRACT CLAIM FOR AN IMPROPER PURPOSE IN BAD FAITH AND IS SUBJECT TO SANCTIONS UNDER RULE 11, THE COURT'S INHERENT POWERS AND 28 U.S.C. 1927.

**A.  <u>The Contract Claim is Frivolous in Violation of Rule 11.</u>**

Rule 11 of the Federal Rules of Civil Procedure provides for sanctions against a party or an attorney who files pleadings that are in bad faith, frivolous or for an improper purpose. Fed. R. Civ. Pro. 11(b) (WESTLAW 2005).  A party and his or her attorney can be sanctioned for bringing a lawsuit unsupported by the facts or for an improper purpose, while the Rule also imposes sanctions on attorneys if pleadings are not warranted under existing law. Fed. R. Civ. P. 11(c)(2)(A) (WESTLAW 2005).  Under this rule, attorneys have a duty to corroborate a party's account of the facts; a continuing duty to assess the factual basis of their client's claims; and an obligation to withdraw any claim that is not well-founded in fact. Del Canto v. Sheraton Corp., 865 F. Supp. 934 (D.D.C 1994); Golemi v. Creative Food Design, 116 F.R.D. 73 (D.D.C. 1987).  Pleadings are evaluated under Rule 11 on an objective standard of reasonableness in light of the circumstances, irrespective of any showing of subjective bad faith. Golemi v. Creative Food Design, 116 F.R.D. 73, 77 (D. D.C. 1987); Trout v. O'Keefe, 114 F.R.D. 587 (D. D.C. 1992). Attorneys' fees incurred for the entire litigation is an appropriate sanction when a frivolous complaint is filed. Chambers v. NASCO, 111 S.Ct. 2123, 2132 n. 8. (1991).

The most persuasive evidence of the frivolous nature of the complaint in the case at bar was the Plaintiff's abandonment of the contract claim covering both the Flatow and Eisenfeld and Duker cases in his Finding of Fact and Conclusions of Law immediately following the January 2003 trial. The Plaintiff argued that the "court could not possibly" find there was a meeting of the minds as to Mr. Perles's alleged contract as there was "no evidence that Ms. Kagy understood and internalized that" her fee was to be a multiple of $50 per hour contingent on recovery. Plaintiff's Findings of Fact and Conclusions of Law pp. 8-9 ¶ 6 (b), (c).  Supra p. 9-10 ¶ 16.

In numerous instances, the District of Columbia Circuit has imposed Rule 11 sanctions when a party files and litigates a frivolous claim. See, e.g., Del Canto v. ITT Sheraton Corp., 865 F. Supp. 934, 938 (D. D.C. 1994) (counsel sanctioned under Rule 11 for pursuing defamation claim after Plaintiff testified that nobody "in the world" told him that the defendants defamed him in any way); Davis v. Noufal, 142 F.R.D. 258, 276 (D. D.C. 1992) (attorney sanctioned for complaint's false allegations that were later refuted by the plaintiff); Hilton Hotels Corp v. Banov, 899 F.2d 40 (D.C. Cir. 1990) (Rule 11 sanctions imposed on attorney who failed to corroborate Plaintiff's account of alleged defamations after claim dismissed on motion for summary judgment). Allen v. Utley, 129 F.R.D. 1, 9, 10 (D. D.C. 1990) (Sanctions imposed against attorney who filed breach of contract action without first reading the contract and who filed a wrongful death action unsupported by the facts).

To comply with Rule 11, prefiling inquiry must show "some information to support the allegations in the complaint." Davis v. Hodgins, 896 F. Supp. 561, 572 (E.D. Va. 1995). Plaintiff's complaint falls woefully below this bar as, by his own pleadings there was "no evidence" supporting his contract claim at the close of trial. Supra p. 9 ¶ 16. Mr. Perles testified that he "couldn't speculate" as to Ms. Kagy's belief as to whether that hourly rate might be pro rata, based on the amount of his fee. Supra p. 9 ¶ 15. Mr. Perles testified that despite Ms. Kagy's repeated requests for a percentage of his fee in Flatow, and his refusals to agree to pay her on this basis, he never "volunteered" the hourly rate she would receive for her services. Supra p. 8 ¶ 11. There obviously could be

no meeting of the minds as to this essential term in the contract he alleged if he never discussed it with her and he did not know her belief as to the term.[4]

Additional evidence presented by Plaintiff's counsel actually disproved his version of the contract. Although he testified that Ms. Kagy was to be paid on an hourly basis, he never asked her for her time to calculate her compensation before he sued her. <u>Supra</u> p. 8 ¶ p.11.   He testified that he asked for the computer zip disk to evaluate the worth of her "work product," to determine her rate of pay, but then did not view the zip disks prior to initiating the declaratory judgment action. <u>Supra</u> p. 8 ¶ 13. His own witness, Mr. Fay, who was co-counsel in the <u>Flatow</u> and <u>Eisenfeld and Duker</u> cases, contradicted Mr. Perles's testimony that the two had evaluated Ms. Kagy's "work product" based on "her normal hourly rate" to come up with a figure of $75,000 to $125,000. <u>Supra</u> p. 8, ¶13. Mr. Fay denied any discussion about an hourly rate of pay for Ms. Kagy. See <u>supra</u> p. 8, ¶ 12.[5] Co-workers and office mates of both Mr. Perles and Ms. Kagy corroborated Ms. Kagy's statements that she was to receive a percentage of his recovery in <u>Flatow</u>. April 10, 2003 Memorandum and Opinion p. 10.   No witnesses testified as to any knowledge of an hourly contract, except of course, Mr. Perles.

---

[4] Contradictory statements within the body of the complaint demonstarate that not only was the claim not well-grounded in fact, but that Mr. Perles had no clear picture of the facts he was alleging.  The Plaintiff pled that Ms. Kagy was generally paid up to $50 per hour for the work she did for him and that she had accepted his offer to be compensated based on an elevated hourly rate. Complaint ¶¶ 14, 20. He acknowledged that he was contractually obligated to pay Ms. Kagy for her services, and then asked the Court to find that: "Defendant is entitled to be paid $50 for every properly documented hour. . ." Complaint ¶ 53.

[5] Mr. Fay's testimony also contradicted Mr. Perles's testimony that he and Mr. Fay had no written agreement for any project they ever worked on. Jan. 23 Tr. p. 20 lns. 16-17, p. 21 lns. 3-6. Mr. Fay, however, testified that he and Mr. Perles have a written agreement that covers all Foreign Sovereign Immunities Act terrorism cases.  Jan. 29 Tr. p. 81 lns. 19-25, p. 82 lns 4-5, p. 91 lns 20-25, p. 92 lns 1-4. Mr. Fay testified that his February 2001 written agreement with Mr. Perles specifically covers the <u>Flatow</u> case.

The facts in the case at bar are most analogous to the false statements that formed the basis of the frivolous claims this Circuit found warranted sanctions under Rule 11. Plaintiff's statements in the <u>Del Canto</u> defamation case denying that "anybody in the world" told him that the defendant had defamed him in any way, are remarkably similar to Mr. Perles's statements that he never discussed with Ms. Kagy the hourly rate he planned to pay her, and that he "could not speculate" as to her belief about her rate of compensation. 856 F. Supp. at 938; <u>supra</u> p. 9 ¶ 15.   Just as reasonable prefiling inquiry in the <u>Allen</u> case would have produced witnesses who refuted claims the Plaintiff did not have enough money for food and necessities just prior to her death, reasonable prefiling inquiry would have disclosed that there was not a single witness to corroborate Mr. Perles's statements that he had an hourly contract with Ms. Kagy. 129 F.R.D. at 6.

In <u>Davis</u>, the Plaintiff alleged that her landlord wrongfully cut off her gas and electricity. 42 F.R.D   at 260. In response to a request for admissions, she not only admitted that she was responsible for paying gas and electricity, but that the services were cut off because she fell in arrears. <u>Id</u>.  In imposing Rule 11 sanctions on both the attorney and the plaintiff, the Court found no excusable reason for the false statements within the complaint as the facts were "peculiarly within the plaintiff's knowledge." <u>Id.</u>, at 260. The Court also noted that "[c]ounsel for the plaintiff could easily have determined the truth of the matter by inquiring of plaintiff whether the facts asserted in the complaint were true." <u>Id.</u> Likewise, by merely discussing the facts of the case at bar with his client, Plaintiff's counsel should have discovered that there was "no evidence" supporting a meeting of the minds as to his contract claim, and this lack of consent was "peculiarly within the plaintiff's knowledge," as he never discussed a material term of the contract

with Ms. Kagy. <u>Davis</u>, 142 F.R.D. at 260.  No factual basis existed, either at the time of the filing of the Complaint or during litigation, to support mutual assent to the terms of the contract put forth by Mr. Perles. The actions of both Mr. Perles and Mr. Schneebaum are sanctionable under Rule 11. <u>Sherman Treaters v. Ahlbrandt</u>, 115 F.R.D. 519, 522-23 (D.D.C. 1987).

While Rule 11 in its current form pays lip service to sanctions for instituting frivolous complaints, the 1993 safe-harbor amendments render the rule ineffective when frivolous claims are withdrawn following prolonged litigation. Fed. R. Civ. P 11(A).[6] <u>See</u> Cutler, "A Practitioners Guide to the 1993 Amendment to Federal Rule of Civil Procedure 11" 67 TEMP. L.Q. 265, 293 (1994); 61   AM. JUR. Pleading § 639 (WESTLAW 2005).   Under the current version of the rule, a party seeking sanctions must serve a copy of the motion for sanctions on the offending party 21 days prior to filing.  Fed. R. Civ. P. 11(A). If the offending party withdraws the claim, or the case is otherwise terminated,  the opposing party cannot seek sanctions under the rule.  Fed. R. Civ. Pro. 11 Advisory Committee Notes to 1993 Amendment; <u>Naegele v. Albers</u>, 355 F. Supp. 2d 129, 143, <u>quoting</u>, <u>Elliott v. Tilton</u>, 64 F. 3d 213, 216 (5th Cir. 1995); <u>United States v. BCCI Holdings</u>, 176 F.R.D. 1, 2 (1997).  Mr. Perles's abandonment of his claim post-trial was in effect a withdrawal of that claim and thereby afforded no opportunity for defense counsel to serve him with 21-day notice prior to withdrawing the offensive pleading.   His litigation abuse falls through the Rule 11 cracks, leaving Ms. Kagy

---

[6]A House Bill pending in the Judiciary Committee would abolish the Safe Harbor provision. 2005 Cong. U.S. HR 420, 109th Congress, 1st Session.

powerless to move the Court for sanctions under the Rule. <u>BCCI Holdings</u>, 176 F.R.D. at 2.[7]

> **B.** **The Filing of the Contract Claim was Done in Bad Faith, Vexatiously, and for Oppressive Reasons.**

While the safe-harbor provision has rendered Rule 11 unavailable to Ms. Kagy in seeking redress for Mr. Perles's litigation abuses, the circumstances in the case at bar are ripe for the court to "fill the interstices" and exercise its inherent powers to impose sanctions. <u>Chambers</u>, 501 U.S. at 46. A court may assess sanctions in the form of attorneys' fees "when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons." <u>Lipsig</u>, 663 F.2d at 180; <u>quoting</u>, <u>Alyeska Pipline v. Wilderness Soc'y</u>, 421 U.S. 240, 257-59 (1975). To impose sanctions under its inherent powers, the court must find conduct that "constituted or was tantamount to bad faith." <u>Roadway Express, Inc. v. Piper</u>, 447 U.S. 752, 764-65 (1980). The Court may infer "bad faith" from a broad range of conduct, including "vexatious, wanton, or oppressive actions" as well as "delaying or disrupting litigation, or hampering a court order." <u>Chambers</u>, 501 U.S. at 46; <u>Roadway</u>, 447 U.S. at 766-67 & n. 13. <u>See generally</u>, <u>Fink v. Gomez</u>, 239 F.3d 989, 992 (9th Cir. 2001)(discussing actions encompassed in "bad faith" definition in U.S. Supreme Court cases). Bad faith also can be inferred f the conduct of a party or counsel during the course of litigation could have been for no other reason than bad faith. <u>See Lipsig</u>, 663 F.2d at 181, 182 (dilatory tactics during discovery and misleading the court in documentary evidence bad faith conduct).

---

[7]The 21-day safe harbor provision, however, does not apply to sanctions imposed by the court on its own initiative. Fed. R. Civ. P. 11(c)(1)(B). <u>United States v. BCCI Holdings</u>, 176 F.R.D. 1, 2 (Court issued rule to show cause as to why court should not impose sanctions on its own initiative after denying petitioners' motion for Rule 11 sanctions due to failure to provide 21 days notice).

1.      **The Filing of the Frivolous Claim and Abandonment Two-and-One Half Years Later Was in Bad Faith**

The District of Columbia Circuit and other jurisdictions have found parties and their attorneys acted in bad faith warranting sanctions when, after prolonged litigation, a frivolous claim is either abandoned, withdrawn, or dismissed on motions for summary judgment. See e.g., Lipsig, 663 F.2d at 181 (frivolous filing suggests bad faith); Heary Bros. Lightning Protection v. Lightning Protection Institute, 287 F. Supp. 2d 1038, 1081-82 (D. Ariz. 2003)(abandonment of claims one year after it became clear facts did not support claims sanctionable under inherent powers and 28 U.S.C.A. § 1927); Hudson Motors Partnership, 845 F. Supp. 969, 982, 983 (E.D. N.Y.1994) (filing of antitrust counterclaim in response to breach of contract claim not warranted under law or based in fact, and was therefore in bad faith warranting sanctions under the court's inherent powers).   See also, Trout v. O'Keefe, 114 F.R.D. 587, 595 (D. D.C. 1992) (U.S. Government acted in bad faith in changing position without reasonable, factual predicate); Cohen v. Virginia Elec. And Power Co., 788 F.2d 247, 249 (4th Cir. 1986) (Sanctions imposed for improper purpose when plaintiff planned from the inception to withdraw the motion); Wallace v. Skadden Arps, Slate, Meagher & Flom, 362 F.3d. 810, 813 (D.C. Cir. 2004) (Finding bad faith in frivolous claims and actions during course of litigation); Lee v. First Lenders Insurance Services, 236 F. 3d 443, 445 (8th Cir. 2001) (Filing class-action complaint, permitting action to proceed through discovery for a year and a half and then abandoning it subjected attorney to sanctions under 28 U.S.C. A. § 1927); In re Kunstler, 914 F.2d 505 (1990) (timing of filing of frivolous complaint and dismissal proved improper purpose initiating lawsuit). If the circumstances show that a pleading was filed with knowledge of its frivolous nature, then the "court may properly

infer that it was filed for purposes of harassment, or some purpose other then to vindicate rights through the judicial process." <u>Kunstler</u>, 914 F.2d at 520.

Mr. Perles and Mr. Schneebaum, both experienced attorneys, would have the Court believe that they did not discover the unenforceability of the contract they alleged until after two-and-one-half years of litigation, and after a five-day trial on the matter. <u>See</u> <u>Kunstler</u> 914 F. 2d at 519 (experience of counsel a factor in determining if frivolous claim was filed for an improper purpose). The record shows that early in the litigation, Mr. Perles's counsel was well aware of the legal theory under which Mr. Perles eventually abandoned his own claim. In his motion for summary judgment filed on July 7, 2002, Mr. Perles attacked Ms. Kagy's contract claim on the same ground on which he later abandoned his own claim. Calling the facts as Ms. Kagy alleged "insufficient" to support a contract, Mr. Perles stated: "none of the essential terms of the contract on which Ms. Kagy sues were ever spelled out between the parties. There was no agreement as to how much or when she was to be paid." Plaintiff's Motion for Summary Judgment p. 14. Mr. Schneebaum echoed this argument in his opening statements, maintaining the contract terms were "so uncertain coming from her own testimony as to constitute, at best, something unenforceable as a matter of law." Jan. 21 Tr. p. 5 lns. 17-20.

The fact that the parties did not mutually assent to the rate of compensation proposed under Mr. Perles's version of the contract obviously was "known" to Plaintiff at the time the complaint was filed. Mr. Perles certainly knew that he had never discussed with Ms. Kagy the hourly rate he toyed with, and that there was "no evidence" supporting his claim. Likewise, Mr. Schneebaum knew at least from Mr. Perles's deposition on May 10, 2002, under Mr. Perles's own version of the contract, he never discussed with Ms.

Kagy what her hourly rate would be. May 10, 2002, Deposition of Steven Perles,  p. 24, lns 2-10.

In his opening statement in the January 2003 trial, Mr. Schneebaum acknowledged that the payment term was "unspecified" under the contract as alleged by Mr. Perles:

> There was a contract between the parties . . . she was to keep track of the hours that she worked on these two cases, **and that she would be paid for her hours at her normal hourly rate . . . and that Perles, P.C., would then multiply that product by a factor that, in the end was never specified**, but the evidence will show that what Mr. Perles had in mind at the time and discussed at the time was a factor of three.

Jan. 21 Tr. p. 6 ln. 21 to 7 ln. 7.

Despite this acknowledgement, the Plaintiff proceeded through trial, only to abandon the contract claim in his Proposed Findings of Fact and Conclusions of Law arguing strenuously in opposition to his own claim in language eerily similar to Mr. Schneebaum's opening statements:

> Plaintiff contends that the contract it had with Ms. Kagy called for her to work on the <u>Flatow</u> case in exchange for payment, **to be received only in the event of an eventual collection of fees from the defendant, measured by her hourly rate enhanced by an "unspecified multiple."** The Court holds that such an arrangement leaves open a material term that must by rights be part of a contract for services: namely the amount of consideration (i.e. the price.)

Plaintiff's Proposed Findings of Fact and Conclusions of Law (2003) p. 21 ¶ 2(b).

The Court characterizes as "unseemly" Mr. Perles's "refusal to agree to specific terms" for Ms. Kagy's remuneration in <u>Eisenfeld and Duker,</u> "while promising to take care of her financially." March 21, 2005 Memorandum Opinion p. 15.  Mr. Perles had no logical, legitimate reason for intentionally keeping the contract payment term vague, then

suing Ms. Kagy under a contact claim that, by his own admission, was unsupported by the evidence and unenforceable as a matter of law.  The actions of Mr. Perles and his counsel in this regard can be nothing but bad faith, subjecting both to sanctions under the Court's inherent powers.

> **2.**    **Mr. Perles Acted in Bad Faith in Changing His Position on Key Factual Issues During the Course of Litigation.**

While filing and abandoning his contract claim post-trial was sufficient to show bad faith, Mr. Perles's flip-flopping on key factual issues before the Court is further evidence of bad faith. Lipsig, 663 F.2d at 182 (Bad faith inferred from frivolous complaint and conduct of a party and his attorney during course of litigation). Mr. Perles pled in his complaint that that he was "contractually obligated" to pay Ms. Kagy in "Flatow and related cases." Supra  p.  7 ¶ 9. He also pled in his complaint that he offered Ms. Kagy a percentage of his recovery in Flatow and that he and Ms. Kagy worked on the Eisenfeld and Duker case under "on a fee basis that was the same as that in Flatow." Supra p. 6 ¶ 5. In discovery and at trial, he then incredulously denied that he offered Ms. Kagy a percentage of his recovery in Flatow. Supra p. 6 ¶ 5; p 6-7 ¶ 6.  As noted by Judge Jackson in his April 10, 2003, Opinion, this denial contradicted Mr. Perles's judicial admission in his Complaint that he had, in fact, offered Ms. Kagy an unspecified percentage of his recovery in Flatow. Supra p.  5, ¶ 2.

Similarly, in regard to the Eisenfeld and Duker case, Mr. Perles pled in his complaint that he was "contractually obligated" to pay Ms. Kagy for her work on "Flatow and related cases," then in discovery and at trial he denied that Ms. Kagy had a reasonable expectation of payment for her work on Eisenfeld and Duker.   Supra p. 11 ¶

17. After Ms. Kagy defended against this allegation, Mr. Perles again changed his view, and  stated post-trial in his Proposed Finding of Facts and Conclusions of Law that Ms. Kagy "had a reasonable expectation of payment." Supra  p. 11 ¶ 17.

In Trout v. O'Keefe, the Court found such a change of position to be misleading of both opposing counsel and the Court and sanctionable under the improper purpose prong of Rule 11. Trout v. O'Keefe, 144 F.R.D. 587 (D. D.C. 1992).  The case involved a sex discrimination suit against the Department of the Navy.   In the course of litigation, the Court found "thirty-two claimants were entitled to summary judgment on the issue of relief." Id. at 589-90. While the Court found class-wide discrimination, the Navy-Justice Department chose to dispute all but five of the individual claims. Id. at 591. On March 22, 1989, the government filed a memorandum indicating these claims were undisputed. Id.  The Plaintiff's filed Motions for Summary Judgment, the government again indicated it would not contest these claims, and summary judgment was granted in favor of the five individual plaintiffs.  Trout, 144 F.R.D. at 591. Justice Department counsel subsequently represented that the five plaintiffs would be promoted as of specific dates. Id.   The Department of Justice did an about-face 18 months after its initial concession on this issue, and stated that the promotions had not taken place, and would not take place until the government exhausted all of its avenues for appeal in the class action portion of the case. Id. at 591-92.

The Court subsequently issued a Rule to Show Cause as to why Rule 11 sanctions should not be imposed. Id. at 592.   The Court found the government's fundamental change of position was misleading, was inherently inconsistent with prior pleadings, and even if viewed under a subjective standard, had no logical or factual basis.

Trout, 144 F.R.D at 594.  While the Government may have subjectively adhered to the "unitary position," the objective meaning of its own pleadings "created a distinct impression that these promotions were an accomplished fact." Trout, 144 F.R.D. at 594; quoting, Trout v. Garrett, 780 F. Supp. 1396 (D. D.C. 1991).   The Court further found the change in position was improper, with the intent to " 'delay the litigation and to harass the plaintiffs.' " Trout, 144 F.R.D. at 595.[8]

Likewise, Mr. Perles's inherently inconsistent statements during the course of this entire litigation were illogical, and could have been for no other reason than to delay litigation, gain a tactical advantage in the lawsuit, harass Ms. Kagy, and to burden Ms. Kagy with "unnecessary expenditures of time and effort," warranting recompense for the expenses attributable thereto. Lipsig, 663 F.2d at 181. [9]

> **2.      An Award of Ms. Kagy's Attorneys Fees in Defending Against Mr. Perles's Contract Claim Is an Appropriate Sanction**

Sanctions imposed under the Court's inherent powers should be sufficient to correct the harm done and cure the prejudice created to the other party. Zenian v. District of Columbia, 283 F. Supp. 2d 36, 38 (D. D.C. 2003).   Additional sanctions may be warranted if the offending party's behavior has been "so flagrant or egregious that deterring similar conduct in the future warrants the sanction sought." Id. An award of attorneys fees necessitated by the offending conduct creating prejudice to the other party

---

[8] While finding a violation of Rule 11, the Court did not impose sanctions due to the fact that the parties who had signed the offending pleadings had left office, and were immune from personal liability. Trout v. O'Keefe, 144 F.R.D. 587, 595 (D. C.C. 1992). The Court found it would be inequitable to impose sanctions on the relative newcomers to the litigation while letting the instigators go "scot free." Id.

[9] Trout concerns imposition of sanctions under the "improper purpose" prong of Rule 11, in which the Court necessarily considers the subjective intent of the party or his attorney in filing a pleading. Trout, 144 F.R.D. at 495; In re Kuntsler, 914 F. 2d at 519.

is an appropriate sanction Id., citing, Webb v. District of Columbia, 146 F. 3d 964, 970-71 (D.C. Cir. 1998).

An award that at a minimum compensates Ms. Kagy for the entire amount of costs and attorneys fees expended in litigating her claims to payment in the Flatow and Eisenfeld and Duker cases is an appropriate sanction under the circumstances.   The Court, however, should give weight to the egregious nature of Mr. Perles's action in bringing the frivolous claim, only to abandon it post-trial. Mr. Schneebaum repeatedly stated that the Plaintiff will appeal the Court's ruling in Flatow.  An additional award to deter similar conduct in the future course of litigation in this case is warranted.

### C.    Mr. Schneebaum Acted Recklessly in Initiating the Contract Claim Against Ms. Kagy and Abandoning the Claim Post-Trial.

An attorney who multiples the proceedings in any case "unreasonably and vexatiously" is liable for opposing party's cost of litigation, including attorney's fees. 28 U.S.C.A. § 1927 (WESTLAW 2005).  Liability on the attorney may be imposed if there is "(1) multiplication of proceedings by an attorney; (2) conduct that can be characterized as unreasonable or vexatious; and, (3) a resulting increase in the cost of the proceedings." The Chosen Few v. Scott, 209 F. Supp. 2d 593, 602 (W.D. N.C. 2002), quoting, Harris v. Marsh, 679 F. Supp. 1204, 1381 (E.D.N.C. 1988). Imposition of sanctions under this statute in the District of Columbia Circuit requires a finding of recklessness, improper motive, or bad faith." [10] Naegele v. Albers, 355 F. Supp. 2d 129, 147- 48 (D. D.C. 2005)

---

[10] There is a split within the D.C. Circuit as to whether proof of mere recklessness or bad faith is required for sanctions under the federal statute. Morrison v. International Programs Consortium, Inc., 240 F. Supp. 2d 53, 56 (D. D.C. 2003).  Compare Hilton Hotels Corp. v. Banov, 899 F.2d 40, 45 n. 9 (D.C. Cir. 1990)(showing of bad faith required); with  Reliance Insurance Co. v. Sweeney Corp., 792 F.2d 1137, 1138 (D.C.

(applying reckless standard); <u>LaPrade v. Kidder Peabody</u>, 146 F.3d 899, 905 (D.C. Cir. 1998)(discussing application of reckless or bad faith standard).   Recklessness in this context is defined as deliberate actions "in disregard of a danger of a known risk to others." <u>Naegele v. Albers</u>, 355 F.Supp. 2d  129,   (D. D.C. 2005), <u>quoting</u>, <u>U.S. v. Wallace</u>, 964 F.2d 1214, 1218 (D.C.Cir. 1992).   Sanctions pursuant to Section 1927 are appropriate when an attorney files or pursues a baseless claim or pleading and then abandons the claim after discovery and litigation. <u>Lee</u>, 236 F.3d at 445. <u>See</u> <u>Wallace</u>, 362 F.3d at 813. The District of Columbia Circuit has found that a single filing can constitute actions that "unreasonably and vexatiously" multiply proceedings. <u>LaPrade</u>, 146 F. 3d at 905.

Notwithstanding Ms. Kagy's argument that the filing of the contract claim was in bad faith, she argues Mr. Schneebaum also acted recklessly in not corroborating his client's statements regarding the contract prior to initiating suit and in continuing the litigation for two-and-one-half years, when his client's own statements showed there was no meeting of the minds as to a material term of the contract as he alleged.   Mr. Schneebaum acted in disregard of a known danger that in failing to investigate Mr. Perles's claim, the complaint he filed against Ms. Kagy would be frivolous and would tie up her payment for both cases during the course of the litigation   Mr. Schneebaum's actions in the case at bar are even more egregious than the actions warranting sanctions under Section 1927 in the Seventh Circuit. In <u>Lee v. First Lenders Insurance Services</u>, the Court imposed sanctions on Plaintiff's counsel who initiated a class-action suit, litigated

---

Cir. 1986) (Mere recklessness sufficient to establish sanctionable conduct). Recently, the District of Columbia District Court has applied the reckless standard with no discussion as to bad faith. <u>Naegele v. Albers</u>, 355 F. Supp. 2d 129, 147- 48 (D. D.C. 2005).

the claims for one and one-half years, and then abandoned the claims without explanation. Lee, 236 F.3d at 445.  Mr. Schneebaum litigated Mr. Perles's contract claim for two-and-one-half years through trial until he finally abandoned it because there was "no evidence" in support of a material contract term he alleged in his own complaint. His litigation abuse subjects him to sanctions for the entire cost of litigation.

## II.     ATTORNEYS FEES ARE MANDATORY UNDER RULE 37.

Rule 37(2) of the Federal Rules of Civil Procedure imposes mandatory sanctions in the form of litigation costs, including attorneys fees, when a "party fails to admit the genuineness of any document or the truth of any matter as requested under Rule 36, and if the party requesting the admission thereafter proves the genuineness of the document or truth of the matter." Fed. R. Civ. P. 37 I(2); see 7 Moore's Federal Practice, § 37.74[1] (Mathew Bender, 3d ed.). The sanctions are imposed in order to meet the goal of Federal Rules of Civil Procedure to provide full and efficient discovery.  Marchand v. Mercy Medical Center, 22 F.3d 933, 937 (9th Cir. 1994), quoting, Fed. R. Civ. P. 1. Admissions requests are not merely procedural, and the responding party must provide candid answers, not evasive wordplay. Marchand, 22 F.3d at 936-37.   A court may decline to award fees and expenses involved in proving a fact unreasonably denied by a party only on a finding that "(A) the request was held objectionable pursuant to Rule 36(a) or (B) the admission sought was of no substantial importance or (C) the party failing to admit had reasonable ground to believe that the party might prevail on the matter, or (D) there was other good reason for the failure to admit." Fed. R. Civ. P. 37(c)(2).

Ms. Kagy is entitled to her reasonable costs for proving that Mr. Perles offered her one-third of his net fee in Flatow, a fact he denied in response to her admissions

request. Fed. R. Civ. Pro. R. 37.  His denial forced her to prove her theory of contract formation in defense to his contract claim, as well as her breach of contract counterclaim. This denial, coupled with his bad faith contract claim, forced the entire litigation, as there was no dispute at trial that she was owed remuneration under a contract theory . April 10, 2003 Memorandum Opinion, p.1-2.

She is also entitled to her reasonable costs for proving that she had a reasonable expectation for payment for her work on <u>Eisenfeld and Duker</u>, a fact that Mr. Perles denied in response to her Request for Admissions.  Ms. Kagy was forced to prove this fact in the <u>quantum meruit</u> portion of the trial, even though Mr. Perles in his complaint stated that what was offered was a percentage of his recovery in <u>Flatow</u> and that Ms. Kagy worked on the <u>Eisenfeld and Duker</u> case "on a fee basis that was the same as that in <u>Flatow</u>." <u>Supra</u> p. 11 ¶ 17.

Mr. Perles made unreasonable denials in his Admission responses regarding his offer to pay Ms. Kagy one-third of his fee in the <u>Flatow</u> case and her reasonable expectation for payment in the <u>Eisenfeld and Duker</u> case.  These denials were  "in contravention of the goal of full discovery, " and Ms. Kagy is entitled to her litigation costs from September 10, 2001, the date of the denials, to entry of final judgment as none of the exceptions excusing the denials are applicable to the case at bar. <u>Marchand</u>, 22 F.3d at 937.

**A.  <u>The Requests Were Not Held Objectionable.</u>**

Expenses and fees may be denied if "the request was held objectionable." Fed. R. Civ. P. 37I(2)(A).  This exception does not apply in the case at bar as Mr. Perles raised no objection to the admission requests. Such a request would have been futile, as he asserted

in his own Complaint that he had, indeed, offered Ms. Kagy a percentage of his recovery, and that he was obligated to compensate Ms. Kagy for her work on <u>Flatow</u> and "related cases," which this Court found could only mean <u>Eisenfeld and Duker</u>. <u>Supra</u> p. 11 ¶17. Further, this exception applies only if (1) an objection is timely (2) there was a pre-trial motion of the sufficiency of the objection, and (3) the Court made a pre-trial ruling that the objection was well-taken. <u>Moore's</u>, at § 37.74[2] citing Fed. R. Civ. P. 37(c), Advisory Committee Note of 1970. As none of these conditions apply, the Admissions Requests cannot be held to be objectionable.

### B. <u>The Admission Was of Substantial Importance</u>

Expenses and fees may be denied if "the admission sought was of no substantial importance" Fed. R. Civ. P. 37I(2)(B). This objection obviously does not apply under the facts of the case at bar as the admission regarding Ms. Kagy's compensation was the core issue in the action that, as Judge Jackson recognized "the Plaintiff acknowledges his indebtedness to the defendant/counter-claimant in some amount for services rendered, but disputes the amount she claims to be owing." April 10, 2003 Memorandum Opinion, p.1-2. The request for the admissions were made early in the litigation, less than six months after Mr. Perles filed the complaint against Ms. Kagy, and less than five months after she filed her answer and counterclaim. In order to prevail on her breach of contract action, Ms. Kagy had to prove that Mr. Perles offered her one-third of his net fee in the <u>Flatow</u> action. Likewise, in order to prevail on her <u>quantum meruit</u> claims, Ms. Kagy was required to show that she had a "reasonable expectation of payment" one of the essential elements of both an implied-in-fact contract and an implied-at-law contract. As both

issues were crucial to Ms. Kagy's claims, Mr. Perles's unreasonable denials require an award of attorneys fees.

### C.   Mr. Perles Had No Reasonable Ground for Believing He Might Prevail on the Matter

Expenses and fees may be denied if the party failing to admit had "reasonable ground" for believing that it might prevail on the matter." Fed. R. Civ. P. 37I(3). The test is objective and assesses whether a party "acted reasonably in believing that he might prevail" at trial. Fed. R. Civ. P. 37I(3) Advisory Committee Notes 1970.  However, "courts will reject a party's attempt to invoke the exception if there clearly was too little evidentiary support to permit a rational jury to resolve the matter in favor of the party that failed to make the requested admission." Moore's Federal Practice, 3rd Ed., 37-135 (2004).  Courts generally have upheld this exception when there is substantially conflicting evidence, there is an unsettled question of law, or the case involves complicated technical issues. Moore's Federal Practice, 3rd Ed., 37-135 to 37-136.

The facts in the case at bar are in sharp contract to those in the ARB v. E-Systems case in which sanctions were denied by the District of Columbia Circuit on the grounds that the defendant acted reasonably in believing it might prevail. 663 F.2d 189 (D.C. Cir.1980).  This breach of contract case involved the placement of television and radio monitoring devices in private homes for viewing and listening research. The contract between the parties was 53 pages long, and required completion in seven phases. ARB 663 F.2d at 191. The installations failed, and the parties disputed the cause. ARB claimed that E-System's equipment was defective, while E-Systems argued the defects were caused by conditions which were not its responsibility, such as the "telecommunications hookup between the households and the computer and the installation practices of the

ARB workmen." Id. at 191-92.  The litigation involved expert opinions supporting both sides of the argument. Id at 194.

 None of these circumstances are present in the case at bar. Not only was there little conflicting evidence as to Ms. Kagy's positions, but there were discrepancies within Mr. Perles's own pleadings, testimony, and other evidence. Supra p. 5 to p. 7 ¶¶ 2, 3, 4, 5, 6,7; p. 8- 11 ¶ 11-17.  Ms. Kagy's interpretation of her contract with Mr. Perles was supported by independent testimony of disinterested witnesses, two of whom described themselves as "friends" of both Mr. Perles and Ms. Kagy. April 10, 2003, Memorandum Opinion p. 9.  In contrast, Mr. Perles eventually acknowledged that there was no basis in fact for the hourly contract he alleged. Supra p. 9-10 ¶ 16.

 Further, Mr. Perles's contention that Ms. Kagy had "no reasonable expectation of payment" for her work on the Eisenfeld and Duker case was refuted by his own testimony and evidence as to her repeated requests to formalize the terms of her payment on this matter. Supra, p. 11 ¶ 17.

 Nor does this case involve unsettled questions of law or complicated technical issues in which there is no agreement among the experts. See, e.g., Board of Directors v. Water's Edge v. Anden Group, 136 F.R.D. 100, 107 (E.D. Va. 1991) (denial reasonable in case involving numerous complex technical facts and legal conclusions); Washington State Dep't of Transp. V. Natural Gas Co., 59 F.3d 793, 806 (9th Cir. 1995) (sanctions denied where party had consulted with experts and attempted to comply with environmental law).  These basic principles of contract law and quantum meruit recovery are well-established, and there was no expert testimony from either party on  the points denied by Mr. Perles.

For the foregoing reasons, Mr. Perles had no reasonable ground for denying that the agreement was for a contingent percentage fee.

**D.**      **Mr. Perles Had No Other Good Reason to Deny the Admission Request.**

Expenses and fees may be denied if there is other good reason for the failure to admit. The bounds of discovery obligations imposed under Rule 36 of the Federal Rules of Civil Procedure are limited to information that is readily available to a party. A denial of a request that is overly burdensome or requires extraordinary efforts to gather and analyze information in order to ascertain the truth of a matter asserted has been ruled to not be sanctionable. See  Fed. R. Civ. P. 37I Advisory Committee's Note (1970); Baird v. Consolidated City of Indianapolis, 830 F. Supp. 1183, 1189-90 (S.D. Ind. 1993); Moore's Federal Practice 3rd Ed. Vol. 7 (Matthew Bender 2004) p. 37-137 & ns. 20-22.  No such facts existed in this case.  In regard to the contract issue, Mr. Perles was asked and denied a simple request regarding his offer.  He had to gather no evidence to determine the truth of the matter asserted. Likewise, in regard to the quantum meruit claim, he had firsthand knowledge of the facts establishing that Ms. Kagy had a reasonable expectation of payment for her work on Eisenfeld and Duker.

## CONCLUSION

For the foregoing reasons, Ms. Kagy respectfully requests this Court grant her motion for reasonable costs and attorneys fees in the amount supported by the affidavits filed herewith.  Ms. Kagy respectfully requests a hearing on the matters before the Court.


Respectfully submitted

Anne-Marie Kagy

By Counsel

**Sher, Cummings, and Ellis**

_____
David E. Sher, Esq., DC Bar No.  176396
Mark D. Cummings, Esq., DC Bar No.  414596
Mary Mertz Parnell, Pro-Hac-Vice
3800 N. Fairfax Drive, No. 7
Arlington, Virginia  22203
Counsel for the Defendant and
Counterclaim Plaintiff

## Certificate of Service

I hereby certify that I served a copy of the foregoing Motion for Sanctions and the attached supporting affidavits by electronic filing to the following counsel of record for the Plaintiff on May 4, 2005:

Steven M. Schneebaum, Esq.
Greenberg Taurig, L.L.P.
800 Connecticut Avenue, N.W.
Washington D.C.

_____
David E. Sher