UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STEVEN R. PERLES, P.C.,

      *Plaintiff and Counterclaim-Defendant,*

      v.

ANNE MARIE KAGY,

      *Defendant and Counterclaim-Plaintiff*

      v.

STEVEN R. PERLES, ESQ.,

      *Third-Party Defendant.*

Civil Action No. 01-0105 (AK)

## **MEMORANDUM OPINION**

Currently before the Court are Plaintiff, Counterclaim-Defendant Steven R. Perles, P.C. and Third-Party Defendant Steven R. Perles' (collectively "Perles") motion to waive posting of a *supersedeas* bond ("Pl. Mot.")[121], Defendant and Counter-Plaintiff Anne-Marie Kagy's (hereinafter "Kagy") opposition and motion for relief from judgment under Rule 60(b) and motion for sanctions in the form of attorney's fees ("Def. Opp'n.") [124]/[125][1] and Thomas

---

[1]Defendant's Motion for Relief from Judgment was filed twice, once as a memorandum and once as a motion, and was assigned docket numbers [124] and [125] respectively.  As far as the Court can determine, the documents are identical.

1

Fortune Fay's motion and accompanying brief to intervene to oppose Perles' motion seeking

waiver of the *supersedeas* bond ("Fay Mot." & "Fay Br.") [122].


BACKGROUND

The issues currently before this Court arise out of two separate but related contract

disputes over fees awarded to Perles based on his work in two wrongful death and state-

sponsored terrorism lawsuits, *Flatow v. Islamic Republic of Iran*, No. 97-0396 (D.D.C.) and

*Eisenfeld and Duker v. Islamic Republic of Iran*, No. 98-1945 (D.D.C.).  Anne Marie Kagy, a

recent law graduate at the time, worked for Perles on these cases with the understanding that

Perles would pay her a percentage of the fees, should any award be forthcoming. The bulk of

Kagy's work on the state-sponsored terrorism cases involved *Flatow*, with some work on the

*Eisenfeld* and *Duker* cases as well.

Although Judge Royce Lamberth entered judgment for the plaintiff in *Flatow* against the

Iranian defendants in excess of $250 million (approximately $23 million of which was

compensatory), the possibility of actually collecting on the judgment was remote.  On January 4,

2001, however, Congress appropriated money to pay the judgments in the *Flatow* and *Eisenfeld*

and *Duker* cases, among others.

With the subsequent availability of funds to pay the judgment and attorney's fees, a

dispute arose between Kagy and Perles regarding the compensation to which she was entitled for

her work on the *Flatow* and *Eisenfeld* and *Duker* cases.  Unable to agree on payment for legal

services, Kagy asserted an "attorney's lien" of $2,000,000 on the net proceeds of the judgment

payments.  (Fay Br. at 2.)  On Jan. 18, 2001, Fay and Perles jointly transferred $2,000,000 from

2

the escrow account holding the proceeds of the two cases to a separate trust account,[2] (hereinafter

"the Greenberg Traurig trust account"), established specifically in response to Kagy's equitable

lien. *Id.*; *see also Perles v. Kagy*, 339 F.Supp.2d 47, 52 (D.D.C. 2004) (hereinafter "Flatow

Order") (explaining that Kagy's lien for attorney's fees caused Perles to place funds subject to

the lien in a separate trust account pending a determination of the validity of the lien).

On Jan. 19, 2001, Perles filed suit against Kagy, seeking a declaratory judgment that

Kagy was only entitled to hourly compensation rather than a percentage share of the net fees

received by Perles.  Kagy counter-claimed for a one-third percentage of the fees, or in the

alternative, for a judgment in *quantum meruit* for the value of her work.

Following a bench trial in January 2003, Judge Thomas Penfield Jackson (now retired)

found the existence of an oral contract between Kagy and Perles and found that Kagy was

entitled to one third of any net fees paid to Perles in the *Flatow* case. *Perles v. Kagy*, Civ. No.

01-105, (D.D.C. April 10, 2003) (Docket #60) (hereinafter "Jackson Order").   Judge Jackson

subsequently referred the case to the undersigned for a determination of the net fees paid to

Perles.[3]

---

[2]The $2 million was initially deposited in the trust account of Patton Boggs, LLP.  The trust account was later transferred to Greenberg Traurig, LLP. (Fay Mot., Ex. D.)

[3]Judge Jackson only found the existence of an oral contract with regard to Kagy's work on the *Flatow* case.  He later referred Kagy's *quantum meruit* claim regarding her work on the *Eisenfeld* and *Duker* cases to this Court with the consent of the parties. *Perles v. Kagy*, Civ. No. 01-105 (D.D.C. August 22, 2003) (Docket #78).  The parties subsequently consented to proceed before a Magistrate Judge for all purposes. *Perles v. Kagy*, Civ. No. 01-105 (D.D.C. Dec. 17, 2004) (Docket #100).

Beginning December 16, 2003, the undersigned held a combined evidentiary hearing to determine of the "net fees" received by Perles in the *Flatow* case,[4] and to decide Kagy's *quantum meruit* claim regarding her work on *Eisenfeld* and *Duker*. On April 20, 2005, this Court entered an amended final order and judgment, *nunc pro tunc*, [113] awarding Kagy $1,339,675.35 plus actual accrued interest in the *Flatow* case and $47,326.09, plus actual accrued interest for the value of her legal services provided in the *Eisenfeld* and *Duker* case.

On May 20, 2005, Perles filed a notice of appeal [117]. Kagy cross-appealed [120] on May 27, 2005. On June 17, 2005, Perles moved for a stay pending appeal and waiver of the *supersedeas* bond [121]. On June 20, 2005, Mr. Thomas Fortune Fay, Perles' co-counsel in the state-sponsored terrorism litigation, filed a motion to intervene [122]. Fay has asserted an interest in the Greenberg Traurig trust account in the amount of $1 million and opposes the use of the trust fund as an alternative to a *supersedeas* bond. Plaintiff's motion to waive the *supersedeas* bond, Fay's motion to intervene and Defendant's motion for relief from judgment are discussed in turn.

<u>DISCUSSION</u>

*1.     Perles' Motion to Waive the Supersedeas Bond*

The district court has broad discretionary power to stay a judgment pending appeal without the requirement of a *supersedeas* bond in appropriate cases. *See* FED. R. CIV. PROC. 62(d) & (g); FED. R. APP. PROC. 8(a) (requiring appellant to seek suspension or modification of the bond requirement in the district court before seeking such relief in the court of appeals); *see also Federal Prescription Service, Inc. v. American Pharmaceutical Assoc.*, 636 F.2d 755, 756-

---

[4]Pursuant to the Jackson Order, April 10, 2003, Docket #60.

4

60 (D.C. Cir. 1980) (upholding district court's authority to grant stay pending appeal without posting of a bond based on defendant's "continuing ability to satisfy the judgment").

Appropriate circumstances for waiver include cases in which the net worth of the judgment creditor far exceeds the amount of the judgment, *Federal Prescription*, 636 F.2d at 761, where available alternative security arrangements exist, *id.* at 758-59, and situations in which posting a bond would place defendant's other creditors in jeopardy, *Olympia Equipment Leasing Co. v. Western Union Telegraph Co.*, 786 F.2d 794, 798-99 (7th Cir. 1986).

The purpose of the bond is to protect the prevailing party from losses that could result if execution of the judgment is delayed. *Federal Prescription*, 636 F.2d at 760.  A *supersedeas* bond should be required therefore, when there is "some reasonable likelihood of the judgment debtor's inability or unwillingness to satisfy the judgment in full upon ultimate disposition of the case." *Id.* at 760; *see also FDIC v. Ann-High Associates*, 129 F.3d 113, 1997 U.S. App. LEXIS 35547 at *3 (D.C. Cir. Dec. 2, 1997) (noting burden on the appellant to provide "an acceptable alternative means of securing the judgment").  Ordinarily, the existence of a trust account established in response to an equitable lien and containing sufficient funds to cover the judgment would constitute adequate alternative security.  However, this does not appear to be the ordinary case.

Fay has asserted a $1 million interest in what is currently an approximate $1.5 million trust account.  In an attempt to protect that interest, on June 8, 2005, Fay filed a "notice of adverse claim" against the Greenberg Traurig account with Citibank pursuant to D.C. Code § 26-803. (Fay Mot. Ex. E.)  Upon receiving a notice of adverse claim, Citibank was obligated to freeze the account for a brief time.  *See Stevenson v. First Nat'l Bank of Washington*, 395 A.2d

5

21, 23 (D.C. App. 1978) (explaining that a financial institution, upon receiving notice of an

adverse claim, may avoid liability for erroneous payments in one of two ways: by interpleading

the claimants or by briefly freezing the account for enough time to allow the plaintiff to tie up the

deposit by legal action).

Filing a notice of adverse claim merely puts the financial institution on notice of the

existence of competing claims to the funds on deposit.  A claimant must follow up by obtaining a

preliminary injunction or other order from a court barring further withdrawals from the account.

D.C. CODE § 26-803 (West 2001).  On June 20, 2005, Fay filed suit directly against Perles and

Greenberg Traurig.  *Fay v. Greenberg Traurig*, Civ. No. 05-1209 (D.D.C. June 20, 2005)

(Docket #1).

As far as this Court can tell, Fay has not sought injunctive relief.[5]  Nevertheless, Fay's

actions demonstrate the uncertainty surrounding the ownership interests in the Greenberg Traurig

trust account.  Even if Fay is ultimately unsuccessful, the account could be frozen such that it

becomes inaccessible to Kagy beyond the disposition of the pending appeals.  This Court will not

approve the use of an account as alternative security when ownership of the account is at best

contested and at worst imminently the subject of separate legal proceedings.

In the absence of any legal restraint on the use of the funds in the Greenberg Traurig trust

account, the Plaintiff may, if he so elects, use such funds in a way that protects Defendant's

---

[5]Fay's Complaint seeks compensatory damages for quasi-contract, unjust enrichment, and "money had and received," as well as compensatory and punitive damages for conversion.  *Fay v. Greenberg Traurig, LLP*, Civ. No. 05-1209 (D.D.C. June 20, 2005) (Docket #1).

judgment on appeal.[6]  Should Plaintiff choose to do so, the Court will accept a cash deposit into its registry in an amount sufficient to cover the judgments plus interest.  Otherwise, Plaintiff must post a *supersedeas* bond.

     2.     *Mr. Fortune Fay's Motion to Intervene*

As a preliminary matter, it should be noted that this Court's jurisdiction over Fay's motion to intervene is open to question.  Even if jurisdiction is found to be lacking, however, the result is the same because Fay's motion to intervene is untimely.

     a.     **Jurisdiction**

Generally, once a timely notice of appeal is filed, jurisdiction over all matters pertaining to the appeal passes to the Court of Appeals, including motions to intervene. *See United States v. Radice*, 40 F.2d 445, 446 (2nd Cir. 1930); *Elgen Mfg. Corp. v. Ventfabrics, Inc.*, 314 F.2d 440, 444 (7th Cir. 1963); *but cf. Associated Builders and Contractors, Inc. v. Herman*, 166 F.3d 1248, 1256-57 (D.C. Cir. 1999) (declining to decide whether district court had jurisdiction to grant post-judgment motion to intervene and noting conflicting authority); *Schmuck v. Hobson*, 408 F.2d 175, 181-82 (D.C. Cir. 1969) (upholding district court's decision to allow intervention by parents of D.C. school-children for purposes of appealing judgment that would otherwise not be appealed).[7]

Post-judgment motions to intervene are disfavored in part because the appellate court

_____

[6]The funds deposited in the trust account following Kagy's assertion of a lien were escrowed to ensure payment to Kagy if she prevailed on her cross-claims.

[7]However, as Judge Skelly Wright explained, until the appellate court remanded the motions to intervene, the district court was "without jurisdiction to pass on th[e] motions" because a timely appeal had been filed. *Hobson v. Hansen*, 44 F.R.D. 18, 21 (D.D.C. 1968).

would be "faced with the necessity of considering factual and legal matters not considered by the trial court." *Rolle v. New York City Housing Auth.*, 294 F. Supp. 574, 578 (S.D.N.Y 1969). Here, however, Fay seeks to intervene solely for the limited purpose of opposing Plaintiff's motion to waive the *supersedeas* bond.  Whether adequate alternative security exists to justify waiver of a *supersedeas* bond is not a question that implicates the merits of the appeal.  Moreover, the district court retains jurisdiction over motions to waive a *supersedeas* bond even after notice of appeal has been filed.[8]  Thus, on balance, this Court believes that jurisdiction exists to consider the merits of Fay's motion to intervene.

> **b.**     **Timeliness of Fay's Motion to Intervene**

Fay seeks to intervene under FED. R. CIV. P. 24(a)(2), which allows intervention as of right "when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."  Fay, in his supporting memorandum, correctly states the above three requirements for intervention under Rule 24(a)(1). (Fay Br. at 5.)  He neglects, however, to mention the fourth requirement, that any such motion be timely.  FED. R. CIV. P. 24(a).

Whether a motion to intervene is timely made is to be determined from all the circumstances, including "time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the possibility of prejudice to those already parties in the case." *Smoke v. Norton*, 252 F.3d

---

[8]See discussion in part one, above.

468, 471 (D.C. Cir. 2001) (citing *United States v. AT&T*, 642 F.2d 1285, 1295 (D.C. Cir. 1980));

*see also Stallworth v. Monsanto*, 558 F.2d 257, 263-66 (5ᵗʰ Cir. 1977) (examining four factors for

consideration in assessing timeliness under Rule 24).

      The determination of timeliness is committed to the discretion of the district court. *See*

*NAACP v. New York*, 413 U.S. 345, 366 (1973) (upholding denial of motion to intervene filed

less than one month after NAACP became aware of the pending lawsuit because defendant had

already consented to entry of summary judgment).  However, "[a] motion for 'intervention after

judgment will usually be denied where a clear opportunity for pre-judgment intervention was not

taken.'" *Associated Builders and Contractors, Inc. v. Herman*, 166 F.3d 1248, 1257 (D.C. Cir.

1999) (citing *Dimond v. District of Columbia*, 792 F.2d 179, 193 (D.C. Cir. 1986).

      Such is the case here. According to Fay's own motion to intervene, in January of 2001, he

voluntarily contributed $1 million to an account knowing and intending it to be used as security

for Ms. Kagy's assertion of an "attorney's lien" against $2,000,000 of the net proceeds of the

*Flatow* and *Eisenfeld* and *Duker* cases. (Fay Br. at 2.)  Judge Penfield Jackson also understood

Fay and Perles to have jointly set aside the two million in the Greenberg Traurig account

specifically for the purpose of paying Kagy any amount to which the Court determined her to be

entitled. (Jackson Order at 8.)

      In fact, as Fay points out, at the time Perles initially sought declaratory relief, Kagy had

asserted a lien against the ***net proceeds*** of the cases, not against Perles' share of the proceeds.

(Fay Br. at 2.)  As such, if Fay believed that he was not liable to Kagy and that her lien

inappropriately encumbered a portion of Fay's share, it was incumbent on him to make that

assertion at some point in the last five years.  Fay offers no justification for his failure to do so.

9

Fay has been a participant in this litigation, albeit an informal one, virtually every step of the way. He voluntarily deposited $1 million into a trust account in response to Kagy's assertion of a lien against the net proceeds. He was subsequently deposed in the present litigation. (Fay Mot. Ex. C.) He even testified as a witness in the bench trial before Judge Jackson. (Trial Tr., 42-116, Jan. 21, 2003; *Id.* at 68-92, Jan. 29, 2003.) For Fay to now complain, nearly five years later and after judgment has been entered, that he wasn't aware that his interest was precariously situated is absurd.

Moreover, as Fay is certainly aware, an attorney's lien grants a security interest in specific property, which a plaintiff can later use to satisfy a money judgment. *See Watters v. Washington Metro. Area Transit Auth.*, 295 F.3d 36, 40-41 (D.C. Cir. 2002); BLACK'S LAW DICTIONARY 933 (7th Ed. 1999) (defining attorney's charging lien as the right "to encumber money . . . until the attorney's fees have been properly determined and paid"). Even if Fay had not personally deposited $1 million of his own funds as security for Kagy's lien, Fay, who is himself a lawyer, cannot plausibly contend that he was unaware the account might be used to pay out a judgment in favor of Ms. Kagy. *See* 7 AM. JUR. 2D, *Attorneys at Law* § 342 (1997) (charging lien entitles attorney to apply to court "for a disbursement of the proceeds realized by the enforcement of the judgment").

That Mr. Fay filed a motion to intervene within two months of learning that Greenberg Traurig had made disbursements from the trust account without his approval, (Fay Br. at 3), is of no consequence. Any understanding Fay had with Perles regarding management of the account is irrelevant to the issue of the existence of a lien and the use of the account as security for the judgment.

10

Nor is intervention necessary to protect Fay's interest. *Cf. Acree v. Republic of Iraq*, 370

F.2d 41, 50 (D.C. Cir. 2004) (allowing government to intervene post-judgment for purposes of

challenging district court's subject matter jurisdiction on a case with highly sensitive foreign

policy implications).  Fay has initiated legal action against Greenberg Traurig and Perles in this

District Court. *Fay v. Greenberg Traurig*, Civ. No. 05-1209 (D.D.C. June 20, 2005) (Docket #1).

Although he has not sought preliminary injunctive relief, that avenue remains open to him.

For nearly five years, the District Court has relied on Plaintiff's assertions, uncontested by

Fay, that $2 million had been set aside as security for Kagy's lien.  This Court will not reopen the

issue following judgment, particularly when Fay has adequate alternative means to protect his

interest.

3.      *Kagy's Motion for Relief from Judgment and Attorney's Fees*

Kagy has filed a motion for relief from judgment, [124]/[125], under FED. R. CIV. P. 60(b)

seeking relief from that portion of the judgment that based the award of prejudgment interest on

actual interest earned rather than the prime rate.[9]  She has also moved for sanctions in the form of

attorney's fees and costs.

**a.      Rule 60(b) Motion for Relief from Judgment**

When a Rule 60(b) motion is filed during pendency of an appeal, the district court has

jurisdiction to consider the motion and may deny the motion outright.  *Hoai v. Vo*, 935 F.2d 308,

312 (D.C. Cir. 1991); *Piper v. U.S. Dep't of Justice*, 374 F. Supp. 2d 73, 2005 U.S. Dist. LEXIS

11369, at *5-7 (D.D.C. June 13, 2005).  "If the court is inclined to grant a Rule 60(b) motion while

---

[9]*Perles v. Kagy*, 339 F. Supp. 2d 47, 52 (D.D.C. 2004), *rep. & recom'd. adopted by*
*Perles v. Kagy*, Civ. No. 01-105 (D.D.C. November 29, 2004) (Docket #99).

appellate review is ongoing, 'the District Court may consider the 60(b) motion, and, if the District Court indicates that it will grant relief, the appellant may move the appellate court for a remand in order that relief may be granted.'" *Piper*, 374 F.Supp.2d 73, 2005 U.S. Dist. LEXIS 11369, at *6 (D.D.C. June 13, 2005) (citing *LaRouche v. Dep't of Treasury*, 112 F. Supp. 2d 48, 52 (D.D.C. 2000)).

This Court carefully considered the issue of pre-judgment interest and ultimately decided that an award of actual accrued interest was eminently fair and reasonable. *See Perles v. Kagy*, 339 F. Supp. 2d 47, 52 (D.D.C. 2004), *rep. & recom'd. adopted by Perles v. Kagy*, Civ. No. 01-105 (D.D.C. November 29, 2004) (Docket #99).   As discussed above, Perles and Fay jointly set aside $2 million in a trust account in response to Kagy's lien.  Kagy asserts that Perles' withdrawal of $400,000 from the Greenberg Traurig trust account for legal fees and expenses arising from the instant litigation is evidence that the funds were not set aside for the purpose of paying out any judgment in her favor.  (Def. Opp'n. at 17.)  This Court disagrees.

Whether Perles inappropriately "invaded the corpus of the constructive trust," as Kagy alleges, (*id.*), may be relevant to whether the trust account may be used as alternative security on appeal.[10]  It does not, however, go to show that the trust account was not created in response to Kagy's lien in the first instance.  Moreover, even after Perles' withdrawal of $400,000, the balance of the account exceeds the amount of the judgments plus interest.  Defendant's motion for relief from judgment under Rule 60(b) is therefore denied.

---

[10]See section one, above.

12

     **b.**     **Motion for Attorney's Fees and Costs**

In light of the pending appeals, Kagy's motion for costs and attorney's fees is premature and outside the jurisdiction of this Court.  Kagy's motion for relief from judgment and for costs and attorney's fees is denied without prejudice.


Dated: August _29th_ , 2005          _____/s/_____
                                       ALAN KAY
                                       UNITED STATES MAGISTRATE JUDGE